UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Chase Carmen Hunter

   v.                                       Civil No. 16-CV-118-LM

Roger A. Sevigny, et al.

**REPORT AND RECOMMENDATION**

    Before the court is pro se plaintiff Chase Carmen Hunter's "Verified Complaint and Petition for Declaratory Judgment and Permanent Injunction" (Doc. No. 1). Hunter alleges various federal and state claims against the defendants, Roger A. Sevigny[1] and the New Hampshire Insurance Department ("NHID"). This matter is before the court for preliminary review to determine whether the complaint asserts any claim upon which relief might be granted. See 28 U.S.C. § 1915(e)(2)(B); LR 4.3(d)(2).

**Standard of Review**

    In determining whether a pro se pleading states a claim, the court construes the pleading liberally. See Erickson v.

---

[1]Sevigny is sued in his capacity as the Commissioner of Insurance for New Hampshire, and as a member of the National Association of Insurance Commissioners. He is sued in his individual and official capacities.

Pardus, 551 U.S. 89, 94 (2007). Disregarding any legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a facially plausible claim to relief. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**Background**

Much of Hunter's twenty-five page complaint alleges a far-reaching conspiracy involving insurance regulators and other officials from several states. Hunter alleges that this conspiracy started when numerous individuals "in Virginia and many other states" entered into an "insurance fraud scheme" designed to "to steal rental real estate from Hunter, to deny Hunter rental income, to kidnap Hunter, and to force other unlawful expenses upon Hunter to force [her] to file bankruptcy or to force her into foreclosure . . ." Compl. ¶ 10 (Doc. No. 1). She alleges that this scheme was designed to partially satisfy a "fraudulent judgment" of "nearly $10,000,000" in the Orange County Florida Circuit Court. Id. Hunter alleges that the scheme ultimately failed, but that a conspiracy nonetheless grew "to include many state and federal crimes including, among other things, kidnapping Hunter." Id.

Though it is not entirely clear from her complaint, it

appears that Hunter alleges that this conspiracy is designed to keep her from providing liability insurance to dog owners.  She alleges that several state insurance regulators and regulatory agencies, along with the National Association of Insurance Commissioners ("NAIC"), have created and/or relied upon fraudulent documents in order to revoke her insurance licenses in those states.  She claims that both Sevigny and the NHID "joined in the criminal conspiracy to perpetuate, protect, and commit federal and state crimes" against both Hunter and the public.  Id. ¶ 11.  Hunter generally alleges that Sevigny participated in this conspiracy in his capacity as a current member and past president of the NAIC, and implies that the conspiracy is or was furthered by the NHID in its capacity as the regulator of insurance within New Hampshire.

   More specifically, Hunter alleges that in early 2016, Sevigny and the NHID violated her rights under state and federal law when they denied her application for a non-resident insurance license without a hearing.  Hunter contends that she was informed on March 3, 2016, that her application for license renewal was denied, and that on that same day, she sent a request for hearing to Sevigny and the NHID via e-mail and facsimile.  She alleges that two days later, on March 5, 2016, she received a letter in the mail indicating that her request

for hearing was untimely and, accordingly, denied.  She contends that this letter was dated and postmarked March 1, 2016.  Hunter asserts that this denial was part of the larger conspiracy against her.

## Discussion

Hunter contends that the defendants have violated her rights under state and federal law.  Due to the confusing nature of her complaint, however, it is not readily apparent which specific state and/or federal rights she believes the defendants violated.  She makes reference to several state and federal statutes, as well as general legal principles and concepts.  After thorough and generous review of the complaint, the court construes Hunter to bring the following claims.

As to federal law, Hunter brings a claim under 42 U.S.C. § 1983 for a civil rights conspiracy, and alleges that the defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), committed honest-services fraud under 18 U.S.C. § 1346, and violated 15 U.S.C. §§ 1681i and 1681s-2.  As to state law, Hunter asserts violations of N.H. Rev. Stat. Ann. ("RSA") §§ 15:3 and 15:4, RSA chapter 21-I, RSA chapter 91-A, RSA § 9-F, and New Hampshire "business registration requirements" and "competitive bidding law."  Finally, Hunter asserts general violations of her human rights

and her procedural due process rights.

## I. Civil Rights Conspiracy

A civil rights conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means . . ." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (citation omitted). The principal element of such a conspiracy "is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Id. (internal quotations omitted) (citation omitted). To assert a civil rights conspiracy under § 1983, a plaintiff must prove that "there has been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Id. (brackets omitted) (citation omitted).

Even when construed liberally, Hunter's complaint includes nothing more than conclusory assertions in support of her conspiracy claim. She has not alleged any concrete facts that could support a reasonable inference that any of the defendants reached an agreement to inflict a wrong against her or injury upon her, or furthered such an agreement through an overt act. And even were the court to assume, arguendo, that an agreement and overt act did occur, Hunter has not alleged any facts demonstrating that, in engaging in such an act, the defendants

5

actually deprived her of a constitutional or statutory right. She has therefore not stated a civil rights conspiracy claim upon which relief might be granted, and the district judge should dismiss this claim.

## II. RICO

A person injured by a RICO violation, as defined by 18 U.S.C. § 1962, may bring an action seeking recovery for such violation in federal court. 18 U.S.C. § 1964(c). Here, Hunter has stated no facts that, even taken as true, support a reasonable inference that the defendants have committed a RICO violation, much less a RICO violation that caused Hunter injury. Indeed, beyond generally asserting that she is the victim of a conspiracy, and invoking RICO in passing, Hunter has failed to identify any concrete violation of RICO at all. The district judge should therefore dismiss Hunter's RICO claim.

## III. Honest-services Fraud

"Honest-services fraud" is a subset of conduct criminalized in the federal mail and wire fraud statutes. 18 U.S.C. § 1346; see also Skilling v. United States, 561 U.S. 358, 399-415 (2010) (discussing the development and application of the honest-services fraud doctrine). There is no express private right of action under the mail and wire fraud statutes, see 18 U.S.C. §§ 1341-1355, and courts have uniformly stated to no implied

private right of action exists under these provisions.  See, e.g., Wisdom v. First Midwest Bank, 167 F.3d 402, 408 (8th Cir. 1999) (collecting cases).  As such, the district judge should dismiss Hunter's claim for honest-services fraud for lack of standing.

**IV.    15 U.S.C. §§ 1681i and 1681s-2**

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., "require[s] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ."  Id. § 1681(b).  The FCRA imposes civil liability for willful or negligent noncompliance with the requirements thereunder.  See id. §§ 1681n, 1681o.  Hunter has not alleged any facts supporting an inference that the defendants willfully or negligently failed to comply with the FCRA.  The district judge should therefore dismiss her claims asserted under 15 U.S.C. §§ 1681i and 1681s-2 for failure to state a claim.

**V.     RSA §§ 15:3 and 15:4**

RSA chapter 15 regulates lobbying activities within the state of New Hampshire.  See RSA § 15:1, et seq.  The sections

7

invoked by Hunter, §§ 15:3 and 15:4, impose certain registration requirements upon lobbyists. Neither these sections specifically nor chapter 15 more generally contains an express private right of action. Moreover, there is no language in sections 15:3, 15:4, or anywhere else in the chapter implying that the legislature intended to create such a right. Cf. <u>Cross v. Brown</u>, 148 N.H. 485, 487 (2002) (addressing implied private rights of action in the context of a different statute). The district judge should therefore dismiss Hunter's claims under RSA §§ 15:3 and 15:4 for lack of standing.

**VI.** **RSA ch. 21-I**

RSA chapter 21-I governs the New Hampshire Department of Administrative Services. This chapter is comprised of several dozen provisions governing numerous and varied matters relating to governmental operations. Hunter has not identified any specific section of this chapter that she believes the defendants violated and, even if she had, there is no express or implied private right of action provided anywhere in this chapter for a violation thereunder. The district judge should therefore also dismiss Hunter's claims against the defendants asserted under RSA chapter 21-I.

**VII.** **RSA ch. 91-A**

RSA chapter 91-A, the New Hampshire "Right to Know" law, is

designed to "ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." Id. at § 91-A:1. "Any person aggrieved by a violation of this chapter may petition . . . for injunctive relief." Id. at § 91-A:7. Even when construing her complaint liberally, Hunter has not alleged any cognizable violation of this chapter by the defendants. The district judge should therefore dismiss Hunter's claim asserted under RSA chapter 91-A.

**VIII.   RSA § 9-F**

RSA § 9-F:1 regulates online access to budget information and reports. RSA § 9-F:2 establishes a legislative oversite committee to monitor compliance with § 9-F:1. Neither of these provisions provides a private right of action, either expressly or by implication. The district judge should therefore dismiss Hunter's RSA § 9-F claim for lack of standing.

**IX.   Other New Hampshire Claims**

Hunter alleges violations of New Hampshire "business registration requirements" and "competitive bidding law." She has not, however, provided any basis for these claims: she has not identified any specific statutory provision that she alleges the defendants violated or demonstrated that she has a right to bring claims of this nature under common law. Despite

construing pro se pleadings liberally, the court will not create or develop arguments in the absence of any discussion of those issues.  See Bartolomeo v. Liburdi, No. 97-0624-ML, 1999 WL 143097, at *3 (D.R.I. Feb. 4, 1999) (citing Cotner v. Hoptkins, 795 F.2d 900, 902 (10th Cir.1986)).  As such, the district judge should dismiss both of these claims.

X.   **Human Rights**

Hunter contends that the defendants have used their positions of authority to violate her "human rights."  She has provided neither legal authority under which her "human rights" were violated, nor pleaded any facts describing how such violations occurred.  The district judge should dismiss this claim.

XI.  **Procedural Due Process**

Hunter contends that the defendants' denial of her application for renewal of her non-resident insurance license violated her procedural due process rights.  Though she does not indicate whether she brings this claim under the Federal or State Constitution (or both), this distinction is immaterial at the present juncture because the same analysis applies: the court "first asks whether there exists a liberty or property interest which has been interfered with by the State[;]" if so, the court "examines whether the procedures attendant upon that

deprivation were constitutionally sufficient." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); see also Appeal of Plantier, 126 N.H. 500, 505-06 (1985) (citations omitted) (applying the same test under the New Hampshire Constitution).

The revocation or suspension of an insurance license without a pre-deprivation hearing violates procedural due process. Guillemard-Ginorio v. Contreras-Gómez, 490 F.3d 31, 40 (1st Cir. 2007); Plantier, 126 N.H. at 506. The New Hampshire Supreme Court ("NHSC") has further held that "the renewal of a license to sell insurance may not be denied without affording due process" under the State Constitution. Plantier, 126 N.H. at 506 (citing Union Fid. Life Ins. Co. v. Whaland, 114 N.H. 832, 834 (1974)).

At this time, Hunter has not alleged sufficient specific facts to support a procedural due process claim under the State or Federal Constitution. In light of the above precedent, however, the court grants Hunter leave, in an order issued simultaneously with this Report and Recommendation, to amend her claims to: (1) specify the processes by which she sought the renewal of her non-resident insurance license; (2) provide greater detail regarding the defendants' actions in response to this renewal request; (3) articulate how the defendants' actions

11

failed to comply with the relevant sections of the RSA[2] (or otherwise provide argument as to why these statutes are insufficient to protect her procedural due process rights); and (4) identify whether she complied with the requirements of RSA § 400-A:24, RSA § 541:3, and RSA § 541:6, which require that a party whose insurance license application is denied, revoked, or suspended move for reconsideration and then, if necessary, appeal to the NHSC.  Further, Hunter should attach to her amended complaint any documents provided to or issued by the NHID or the NHSC, concerning her application for, and the denial of, renewal of her non-resident insurance license.

## Conclusion

For the foregoing reasons, the district judge should dismiss all of the claims asserted in Hunter's complaint, as construed herein, except her procedural due process claims.  In an Order issued simultaneously with this Report and Recommendation, Hunter is granted leave to amend those claims.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed.

---

[2] See, e.g., RSA § 402-J:12 (defining the Commissioner's authority to deny, revoke, or decline to renew an insurance producer license); RSA § 400-A:17 (requiring the Commissioner to hold a hearing under certain circumstances and detailing the requirements for same).

R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 21-22 (1st Cir. 2014).

_____
Andrea K. Johnstone
United States Magistrate Judge

October 27, 2016

cc: Chase Carmen Hunter, pro se